IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| NATIONWIDE AFFINITY INSURANCE COMPANY OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL RICHARDS and JILL RICHARDS, Individually and as Natural Parents, Next of Kin, Administrator ad Litem and Personal Representative for MICHAEL CONNOR RICHARDS, Deceased, LODEN KNOTTS, KAITLIN MARTIN, CADE MILLER, COLE MILLER, GARY MILLER, KAREN MILLER, SARAH HOLLOWAY, MATTHEW GALLOWAY, and DONALD A. GIAMANCO, <br><br> Defendants. | No. 2:19-cv-02357-SHM-cgc |

## ORDER

Before the Court is Plaintiff Nationwide Affinity Insurance Company of America's ("Nationwide") October 1, 2019 Motion for Summary Judgment. (ECF No. 26.) Defendants Michael Richards, Jill Richards, Loden Knotts, Kaitlin Martin, Cade Miller, Cole Miller, Gary Miller, Karen Miller, and Sarah Holloway responded on November 7, 2019.[1] (ECF No. 30.) For the following reasons,

---

[1] Defendant Matthew Galloway has not been served. (See Unexecuted Summons as to Matthew Galloway, ECF No. 21.) Defendant Donald A.

as to the second issue on which Nationwide seeks a declaratory judgment -- whether Defendants are entitled to damages for emotional distress and mental anguish -- Nationwide's Complaint is DISMISSED for lack of standing. As to the first issue on which Nationwide seeks a declaratory judgment -- whether Michael and Jill Richards are eligible to recover uninsured/underinsured motorist benefits from Nationwide -- Nationwide's Motion for Summary Judgment is GRANTED.

## I. Background

This declaratory judgment action arises from an automobile accident. On January 7, 2018, a vehicle driven by Donald A. Giamanco crashed into a 2008 Chevrolet Tahoe occupied by Michael Connor Richards, Loden Knotts, Kaitlin Martin, Cade Miller, Cole Miller, Sarah Holloway, and Matthew Galloway. (ECF No. 26-2 at 1-2.) The Tahoe was insured by Nationwide under a policy issued to Gary and Karen Miller (the "Miller Policy"). (ECF No. 30-1 ¶ 1.) The Miller Policy was issued in Tennessee. (Id.) It provides uninsured/underinsured motorist ("UM") bodily injury policy limits of $300,000 each person, $300,000 each occurrence. (Id. ¶ 2.)

---

Giamanco filed an answer to Nationwide's Complaint (ECF No. 25) but has not filed a response to Nationwide's Motion for Summary Judgment.

Tort suits have been filed in this Court against Donald A. Giamanco by Michael and Jill Richards, individually and as representatives of decedent Michael Connor Richards (Case No. 2:19-cv-02019); by Kaitlin Martin, Cade Miller, Cole Miller, and Sarah Holloway (Case No. 2:19-cv-02020); and by Loden Knotts (Case No. 2:19-cv-02002). Matthew Galloway has filed a tort suit against Giamanco in the Circuit Court of Shelby County, Tennessee (Case No. CT-0030-19).

In this declaratory judgment action, Nationwide asks the Court to determine the scope of Nationwide's liability to pay UM benefits to Defendants under the Miller Policy. (ECF No. 26.) Nationwide seeks a declaratory judgment on two distinct issues. (Id.)

The first issue affects only Defendants Michael and Jill Richards ("the Richards"). The Richards have recovered $300,000 in UM benefits resulting from the death of their son Michael Connor Richards in the January 7, 2018 accident under two policies issued to the Richards in Virginia -- $250,000 under a Liberty Mutual Insurance Company policy and $50,000 under a GEICO policy. (ECF No. 30-1 ¶¶ 4-5.) Nationwide asks the Court to declare that the Richards have received the full amount of UM benefits for bodily injury recoverable under Tennessee law and are ineligible to recover UM benefits for bodily injury under the Miller Policy. (ECF No. 26-2 at 3-5.)

3

The second issue affects Defendants Michael Richards, Jill Richards, Loden Knotts, Kaitlin Martin, Cade Miller, Cole Miller, Sarah Holloway, and Matthew Galloway. In their tort complaints, these Defendants claim damages for mental and emotional distress. (See Case No. 2:19-cv-02002, ECF No. 1 ¶ 17; Case No. 2:19-cv-02019, ECF No. 1 ¶ 24; Case No. 2:19-cv-02020, ECF No. 1 ¶ 30.) The Miller Policy provides that "[Nationwide] will pay compensatory damages which an 'insured' is legally entitled to recover from the owner or operator of an 'uninsured motor vehicle' because of . . . 'bodily injury' sustained by an 'insured' and caused by an accident." (ECF No. 30-1 ¶ 6.) It defines "bodily injury" as follows:

> "Bodily injury" means bodily harm, sickness or disease, including death that results. "Bodily injury" does not include emotional distress, mental anguish, humiliation, mental distress or injury, or any similar injury unless the direct result of bodily harm.

(Id.) Nationwide asks the Court to declare that Defendants may not recover UM benefits under the Miller Policy "for any emotional distress and mental anguish claimed by any of the Defendants, for any claims arising out of the [January 7, 2018] automobile accident . . . ." (ECF No. 26.)

## II. Jurisdiction and Choice of Law

### A. Jurisdiction

Under the Declaratory Judgment Act, 28 U.S.C. § 2201, "[i]n a case of actual controversy within its jurisdiction . . . any

court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  "The Declaratory Judgment Act does not create an independent basis for federal subject matter jurisdiction."  Heydon v. MediaOne of Se. Mich., Inc., 327 F.3d 466, 470 (6th Cir. 2003).  "The Act only provides courts with discretion to fashion a remedy."  Id.  "A federal court accordingly 'must have jurisdiction already under some other federal statute' before a plaintiff can 'invok[e] the Act.'"  Davis v. United States, 499 F.3d 590, 594 (6th Cir. 2007) (quoting Toledo v. Jackson, 485 F.3d 836, 839 (6th Cir. 2007)).

The Court has diversity jurisdiction under 28 U.S.C. § 1332.  Nationwide is an Ohio corporation with its principal place of business in Columbus, Ohio. (ECF No. 33 ¶ 1.)  Michael Richards, Jill Richards, and Kaitlin Martin are resident citizens of Virginia. (ECF No. 1 ¶¶ 3, 5.)  Loden Knotts and Matthew Galloway are resident citizens of Mississippi.  (Id. ¶¶ 4, 6.)  Cade Miller, Cole Miller, Gary Miller, Karen Miller, and Sarah Holloway are resident citizens of Tennessee.  (Id. ¶ 5; ECF No. 33 ¶ 2.)  Donald A. Giamanco is a resident citizen of Missouri. (ECF No. 1 ¶ 7.)  The parties are completely diverse.

Nationwide alleges that the amount in controversy exceeds $75,000.  (Id. ¶ 1.)  "[T]he sum claimed by the plaintiff controls if the claim is apparently made in good faith."  St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288 (1938); see also Charvat v. NMP, LLC, 656 F.3d 440, 447 (6th Cir. 2011). The requirements of diversity jurisdiction are satisfied.

**B.   Choice of Law**

In a diversity action, the choice-of-law rules of the forum state apply.  Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Montgomery v. Wyeth, 580 F.3d 455, 459 (6th Cir. 2009).  "In Tennessee, absent a valid choice of law provision, the rights and obligations under an insurance policy are governed by the law of the state where the insurance policy was 'made and delivered.'"  Charles Hampton's A-1 Signs, Inc. v. Am. States Ins. Co., 225 S.W.3d 482, 485 n.1 (Tenn. Ct. App. 2006) (quoting Ohio Cas. Ins. Co. v. Travelers Indem. Co., 493 S.W.2d 465, 467 (Tenn. 1973)); see also In re Estate of Davis, 184 S.W.3d 231, 234 (Tenn. Ct. App. 2004) ("Absent a contractual choice of law provision, Tennessee courts apply the lex loci rule to contract causes of action.  Accordingly, the substantive law of the state in which the contract was executed governs disputes arising from the contract.") (citation omitted).

The Miller Policy was issued in Tennessee.  (ECF No. 30-1 ¶ 2.)  It contains a choice-of-law clause providing that "[t]he

contract law of the state where the policy was issued governs the interpretation of this contract, except for the Mutual Policy Conditions and Proxy, which shall be governed by the insuring company's state of domicile."  (ECF No. 26-3 at 35.)  Tennessee substantive law governs the Miller Policy.

## III.  Standard for Summary Judgment

Under Federal Rule of Civil Procedure 56, a court must grant a party's motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party must show that the nonmoving party, having had sufficient opportunity for discovery, lacks evidence to support an essential element of its case.  See Fed. R. Civ. P. 56(c)(1); Peeples v. City of Detroit, 891 F.3d 622, 630 (6th Cir. 2018).

When confronted with a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine dispute for trial.  See Fed. R. Civ. P. 56(c).  "A genuine dispute exists when the plaintiff presents significant probative evidence on which a reasonable jury could return a verdict for her."  EEOC v. Ford Motor Co., 782 F.3d 753, 760 (6th Cir. 2015) (en banc) (quotation marks omitted).  The nonmoving party must do more than simply "'show that there is some metaphysical doubt as to the material facts.'"

_Lossia v. Flagstar Bancorp, Inc._, 895 F.3d 423, 428 (6th Cir. 2018) (quoting _Matsushita Elec. Indus. Co. v. Zenith Radio Corp._, 475 U.S. 574, 586 (1986)).

Although summary judgment must be used carefully, it "is an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action[,] rather than a disfavored procedural shortcut." _FDIC v. Jeff Miller Stables_, 573 F.3d 289, 294 (6th Cir. 2009) (quotation marks and citations omitted).

## IV. Standing

"Standing has three elements." _Fednav, Ltd. v. Chester_, 547 F.3d 607, 614 (6th Cir. 2008). "First, the plaintiff must have suffered an 'injury in fact' -- an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." _Id._ (quoting _Lujan v. Defenders of Wildlife_, 504 U.S. 555, 560 (1992)). "Second, the injury must be 'fairly traceable to the challenged action of the defendant.'" _Id._ (quoting _Lujan_, 504 U.S. at 560). "Third, it must be likely that the injury will be 'redressed by a favorable decision.'" _Id._ (quoting _Lujan_, 504 U.S. at 561).

"The existence of an 'actual controversy' in a constitutional sense is necessary to sustain jurisdiction under the Declaratory Judgment Act." _Nat'l Rifle Ass'n of Am. v._

Magaw, 132 F.3d 272, 279 (6th Cir. 1997).  To determine whether
there is an "actual controversy," courts "must ask whether the
parties have 'adverse legal interests, of sufficient immediacy
and reality to warrant the issuance of a declaratory judgment'
even though the injury-in-fact has not yet been completed." Id.
at 280 (quoting Golden v. Zwickler, 394 U.S. 103, 108 (1969)).
A plaintiff may satisfy that requirement by demonstrating "actual
present harm or a significant possibility of future harm," Hyman
v. City of Louisville, 53 F. App'x 740, 743 (6th Cir. 2002)
(quoting Peoples Rights Org. v. City of Columbus, 152 F.3d 522,
527 (6th Cir. 1998)), provided the other requirements of standing
are satisfied, see White v. United States, 601 F.3d 545, 555
(6th Cir. 2010).

    Nationwide seeks a declaratory judgment on two issues.  The
first is whether the Richards are eligible to recover UM benefits
for bodily injury under the Miller Policy.  (See ECF No. 26-2 at
3-5.)  Nationwide has standing to sue for a declaratory judgment
on this issue.  There is an actual controversy between Nationwide
and the Richards about whether Tennessee law bars the Richards
from obtaining UM benefits for bodily injury under the Miller
Policy.  The Richards are plaintiffs in a tort suit against
Donald A. Giamanco in which they "claim[] uninsured/underinsured
motorist coverage from [Nationwide]." (ECF No. 1 ¶ 3.)  In their
response to Nationwide's Motion for Summary Judgment, the

9

Richards argue that Tennessee law does not bar them from recovering UM benefits for bodily injury under the Miller Policy. (See ECF No. 30-2 at 4-6.) Nationwide has demonstrated a significant possibility of future harm that is imminent, concrete, and particularized. See Allstate Ins. Co. v. Green, 825 F.2d 1061, 1064 (6th Cir. 1987), abrogated on other grounds by Wilton v. Seven Falls Co., 515 U.S. 277, 289-90 (1995) ("[A]ntagonistic assertions regarding liability for benefits [are] properly encompassed within the Declaratory Judgment Act.") (citing Aetna Life Ins. Co. of Hartford v. Haworth, 300 U.S. 227 (1937)); Certain Underwriters at Lloyd's v. Alkabsh, No. 09-2711, 2011 WL 938407, at *1-2 (W.D. Tenn. Mar. 15, 2011) (insurer plaintiff had standing to request declaratory judgment determining its potential obligation to pay benefits where the "Defendants [had] filed a claim for insurance coverage against Plaintiff"); TIG Ins. Co. v. Merryland Childcare & Dev. Ctr., Inc., No. 04-2666, 2005 WL 3008646, at *2 (W.D. Tenn. Nov. 9, 2005) ("[P]articularly in cases involving insurance coverage, declaratory judgment actions to determine the scope of liability are permissible despite the fact that the exact sums for which the insurer may be liable have not yet been determined.") (quoting Rorer Grp., Inc. v. Home Indem. Co., No. 88-9752, 1990 WL 106724, at *4 (E.D. Pa. July 25, 1990)). Nationwide has also demonstrated that the injury is fairly traceable to the Richards'

actions and that a declaration about its responsibility to provide coverage would redress that injury. Nationwide has standing to sue on the first issue.

The second issue is whether Defendants are entitled to recover UM benefits under the Miller Policy for emotional distress and mental anguish. (See ECF No. 26.) Nationwide has not demonstrated an actual controversy among the parties on this issue. Nationwide argues that Tennessee law bars Defendants from recovering stand-alone emotional distress and mental anguish damages "for causes other than their own bodily harm, i.e., a bystander claim." (ECF No. 26-2 at 6; see also id. at 2 (submitting that "[t]he Defendants have [] made claims for emotional distress and mental anguish for witnessing the death of Michael Conn[o]r Richards . . .").) Nationwide cites Garrison v. Bickford, 377 S.W.3d 659 (Tenn. 2012), in which the Tennessee Supreme Court held that "the phrase 'bodily injury,' as used in both [the Tennessee UM statute] and the [insurance] policy before us, does not include damages for a mental or emotional injury by itself." 377 S.W.3d at 669-70 (emphasis added); see also id. at 671 ("[A] bystander claim for negligent infliction of emotional distress . . . is not a claim for bodily harm.").

Defendants have not claimed stand-alone emotional distress or mental anguish damages. In their response to Nationwide's Motion for Summary Judgment, they recognize that Garrison "stands

11

for the proposition that a stand alone bystander who is not physically involved in [an] accident . . . cannot make a claim for [UM] benefits alleging damages of emotional distress and/or negligent infliction of emotional distress."  (ECF No. 30-2 at 6.)  They submit that "[t]his is not the case at issue . . . ." (Id.)  Defendants make clear that they "have made claims for personal injuries and underinsured motorist benefits from the Plaintiff Nationwide, including claims for emotional distress and mental anguish caused by their own physical injuries while occupants of the 2008 [Tahoe] and being physically involved in the accident and simply not from just witnessing the death of Michael Connor Richards in the accident of January 7, 2018." (Id. at 7 (emphasis added).)

The Miller Policy contemplates liability for emotional distress or mental anguish that is "the direct result of bodily harm."  (ECF No. 30-1 ¶ 6.)  Nationwide does not assert that Defendants are barred from recovering damages for emotional distress or mental anguish resulting from their physical injuries in the January 7, 2018 accident -- which is the only type of damages for emotional distress or mental anguish Defendants seek. There is no actual controversy among the parties about damages for emotional distress or mental anguish.  See Am. Zurich Ins. Co. v. Cooper Tire & Rubber Co., 465 F. Supp. 2d 827, 832-33 (N.D. Ohio 2006) (finding that "no actual, justiciable

12

controversy exist[ed]" in a declaratory judgment action brought by an insured against an insurer where "the likelihood of the controversy becoming real is too remote, and there is not sufficient immediacy and reality to warrant the issuance of a declaratory judgment").  Nationwide does not have standing to sue for a declaratory judgment on the second issue.  Nationwide's Complaint is DISMISSED for lack of standing on the issue of emotional distress and mental anguish.  See, e.g., Hyman, 53 F. App'x at 742-43 (directing the dismisssal of a declaratory judgment action where plaintiff lacked standing).

## V.  Declaratory Judgment Act

The requirements of standing are met on Nationwide's first issue -- whether the Richards are eligible to recover UM benefits for bodily injury under the Miller Policy.  The Court has discretion about whether to exercise jurisdiction over Nationwide's request for a declaratory judgment on this issue. See Travelers Indem. Co. v. Bowling Green Prof'l Assocs., PLC, 495 F.3d 266, 271 (6th Cir. 2007) (noting that the Declaratory Judgment Act "affords the district court 'discretion in determining whether and when to entertain [a declaratory] action . . . even when the suit otherwise satisfies subject matter jurisdictional prerequisites'") (quoting Adrian Energy Assocs. v. Mich. Pub. Serv. Comm'n, 481 F.3d 414, 421 (6th Cir. 2007)).

In deciding whether to exercise jurisdiction over a declaratory action, district courts in this Circuit consider five factors:

> (1) whether the declaratory action would settle the controversy;
>
> (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
>
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for res judicata";
>
> (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and
>
> (5) whether there is an alternative remedy which is better or more effective.

Scottsdale Ins. Co. v. Flowers, 513 F.3d 546, 554 (6th Cir. 2008) (quoting Grand Trunk W. R.R. Co. v. Consol. Rail Corp, 746 F.2d 323, 326 (6th Cir. 1984)). "Although the above formulation indicates the court should balance the five factors," the Sixth Circuit "ha[s] never indicated the relative weights of the factors." United Specialty Ins. Co. v. Cole's Place, Inc., 936 F.3d 386, 396 (6th Cir. 2019) (quotation marks and citation omitted). "Instead, '[t]he relative weight of the underlying considerations of efficiency, fairness, and federalism will depend on the facts of the case.'" Id. (quoting W. World Ins. Co. v. Hoey, 773 F.3d 755, 759 (6th Cir. 2014)).

## A. Whether the Declaratory Action Would Settle the Controversy

A declaratory judgment in this case would settle the controversy between the parties. Nationwide and the Richards dispute whether the Richards are eligible to receive UM benefits for bodily injury under the Miller Policy. (<u>Compare</u> ECF No. 26-2 at 3-5, <u>with</u> ECF No. 30-2 at 4-6.) The resolution of that issue turns on a question of Tennessee insurance law. There are no factual disputes. <u>See</u> <u>Flowers</u>, 513 F.3d at 556 (district court's exercise of jurisdiction over declaratory action was appropriate where "the issue involved a legal, not factual, dispute . . . [and] did not require the district court to inquire into matters being developed through . . . discovery"). The first factor weighs in favor of exercising jurisdiction. <u>See</u> <u>id.</u> at 554-56; <u>Burlington Ins. Co. v. Greenwood Rollerdrome, Inc.</u>, No. 3:17-cv-00586, 2019 WL 4783111, at *2 (W.D. Ky. Sept. 30, 2019) (first factor weighed in favor of exercising jurisdiction where it involved "a technical or legal issue . . . at the heart of the [insurance] coverage controversy") (quotation marks and citation omitted).

## B. Whether the Declaratory Action Would Serve a Useful Purpose in Clarifying the Legal Relations in Issue

Issuing a declaratory judgment would serve a useful purpose in clarifying the legal relations in issue. "Indeed, it is almost always the case that if a declaratory judgment will settle

the controversy, then it will clarify the legal relations in issue." <u>Flowers</u>, 513 F.3d at 557. Issuing a declaratory judgment would clarify whether Nationwide is contractually obligated to pay UM benefits for bodily injury to the Richards. The second factor weighs in favor of exercising jurisdiction. <u>See</u> <u>id.</u> at 556-58; <u>Am. Guar. and Liab. Ins. Co. v. Norfolk S. Ry. Co.</u>, 278 F. Supp. 3d 1025, 1036 (E.D. Tenn. 2017) (second factor weighed in favor of exercising jurisdiction where "[a] declaratory judgment would efficiently determine the existence and extent of [insurers'] obligations to [insured]").

### C. Whether the Declaratory Remedy Is Being Used for the Purpose of Procedural Fencing or Res Judicata

The third factor is meant to preclude jurisdiction for "declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff' and who seem to have done so for the purpose of acquiring a favorable forum." <u>AmSouth Bank v. Dale</u>, 386 F.3d 763, 788 (6th Cir. 2004). "[W]hen the plaintiff has filed his claim after the [underlying] state court litigation has begun, we have generally given the plaintiff 'the benefit of the doubt that no improper motive fueled the filing of [the] action.'" <u>Flowers</u>, 513 F.3d at 558 (alteration in original) (quoting <u>Bituminous Cas. Corp. v. J & L Lumber Co.</u>, 373 F.3d 807, 814 (6th Cir. 2004)). There are no "procedural fencing" or "race to res judicata" concerns in this

case. The Richards' underlying tort action was filed before
Nationwide's declaratory action in this same Court. (See Compl.,
ECF No. 1, Richards v. Giamanco, No. 2:19-cv-02019, W.D. Tenn.)
The third factor weighs in favor of exercising jurisdiction. See
Flowers, 513 F.3d at 558-59; Greenwood Rollerdrome, 2019 WL
4783111, at *3 (finding that third factor weighed in favor of
exercising jurisdiction and noting that "[t]he Sixth Circuit
seldom finds procedural fencing if the declaratory-plaintiff
filed after the start of litigation in state court") (citing
Cole's Place, 936 F.3d at 399).

### D. Whether a Declaratory Action Would Increase Friction Between Federal and State Courts

To determine whether exercising jurisdiction over a
declaratory action would increase friction between federal and
state courts, three sub-factors are relevant:

> (1) whether the underlying factual issues are
> important to an informed resolution of the case;

> (2) whether the state trial court is in a better
> position to evaluate those factual issues than is the
> federal court; and

> (3) whether there is a close nexus between underlying
> factual and legal issues and state law and/or public
> policy, or whether federal common or statutory law
> dictates a resolution of the declaratory judgment
> action.

Flowers, 513 F.3d at 560 (quoting Bituminous, 373 F.3d at 814-
15).

### 1. Whether the Underlying Factual Issues Are Important to an Informed Resolution of the Case

The first sub-factor "focuses on whether the state court's resolution of the factual issues in the case is necessary for the district court's resolution of the declaratory judgment action." Id. Where, as here, there is no underlying state action that would be affected by a ruling on the federal declaratory action, this factor is not a concern.[2] The first sub-factor weighs in favor of exercising jurisdiction. See Norfolk, 278 F. Supp. 3d at 1036 (first sub-factor weighed in favor of exercising jurisdiction where "there [was] not an underlying state court action that the Court [would] be impeding or contradicting by exercising jurisdiction"); Bd. of Educ. of Shelby Cty. v. Memphis City Bd. of Educ., No. 11-2101, 2011 WL 3444059, at *29 (W.D. Tenn. Aug. 8, 2011) (same).

### 2. Whether the State Trial Court Is in a Better Position to Evaluate the Factual Issues Than the Federal Court

The second sub-factor "focuses on which court, federal or state, is in a better position to resolve the issues in the declaratory action." Flowers, 513 F.3d at 560. The Sixth Circuit "generally consider[s] state courts to be in a better

---

[2] One of Defendants' tort suits against Giamanco -- Matthew Galloway's -- is in Tennessee court. However, Galloway's proceeding will not be affected by a ruling on the first issue of Nationwide's declaratory action, which relates solely to the Richards' rights under the Miller Policy.

position to evaluate novel questions of state law." Id. (collecting cases). However, "'[t]his is not to say that a district court should always turn away a declaratory judgment action when an undetermined question of state law is presented, but it is an appropriate consideration for the court to weigh in the exercise of its discretion.'" Id. (quoting Scottsdale Ins. Co. v. Roumph, 211 F.3d 964, 969 (6th Cir. 2000)). "This consideration appears to have less force when the state law is clear and when the state court is not considering the issues." Id.

As discussed infra, resolution of Nationwide's declaratory action turns on a novel question of Tennessee insurance law. However, state statutes provide the answer to the novel question of law at issue, and no state court is considering the question. The second sub-factor weighs neither for nor against exercising jurisdiction. See id. (citing Northland Ins. Co. v. Stewart Title Guar. Co., 327 F.3d 448, 454 (6th Cir. 2003)); Bd. of Educ. of Shelby Cty., 2011 WL 3444059, at *29 (finding exercise of jurisdiction over "novel questions of Tennessee law" appropriate where "a state court [was] not considering those issues and state law is clear on how those novel questions should be resolved").

### 3. Whether There Is a Close Nexus Between Underlying Factual and Legal Issues and State Law and/or Public Policy

"The final sub-factor focuses on whether the issue in the federal action implicates important state policies and is, thus, more appropriately considered in state court." Flowers, 513 F.3d at 561. The Sixth Circuit "often recognize[s] that state courts are better positioned to resolve insurance disputes because they are more familiar with the governing laws, and those laws are enacted to protect the citizens of the state." Mass. Bay. Ins. Co. v. Christian Funeral Dirs., Inc., 759 F. App'x 431, 440 (6th Cir. 2018) (collecting cases). "[E]ven in cases where state law has not been difficult to apply," the Sixth Circuit "has usually found that the interpretation of insurance contracts is closely entwined with state public policy." Cole's Place, 936 F.3d at 401. The third sub-factor weighs against exercising jurisdiction. See Flowers, 513 F.3d at 561; Greenwood Rollerdrome, 2019 WL 4783111, at *3; Auto-Owners Ins. Co. v. Sinor, No. 1:11-cv-27, 2011 WL 3489679, at *6 (E.D. Tenn. Aug. 9, 2011).

On balance, the fourth factor weighs neither for nor against exercising jurisdiction. See Cole's Place, 936 F.3d at 401 (fourth factor was "neutral" where "the first subfactor . . . cut[] in favor of jurisdiction; the second [was] neutral; and the last subfactor cut[] against it").

**E.    Whether There Is an Alternative Remedy Which Is Better or More Effective**

There is not an alternative remedy that is better or more effective than a resolution of this declaratory action.  The issue of insurance coverage that Nationwide raises is not before a Tennessee court.  Nationwide could have brought a declaratory judgment action in a Tennessee court.  See, e.g., Colonial Pipeline Co. v. Morgan, 263 S.W.3d 827, 837 (Tenn. 2008).  There is no indication, however, that a state court declaratory judgment would provide a superior remedy.  At the time Nationwide filed this declaratory action, the Richards' underlying tort action was already proceeding in this Court.  No party has objected to the form of this action.  Both sides seek a resolution.  A resolution is efficient.  The fifth factor weighs in favor of exercising jurisdiction.  See Northland, 327 F.3d at 454 (fifth factor did not weigh against exercising jurisdiction where "intervening in the [underlying] state court action would not necessarily have provided a better or more effective alternative remedy"); Norfolk, 278 F. Supp. 3d at 1036 (fifth factor weighed in favor of exercising jurisdiction where resolution of the parties' insurance coverage issues "w[ould] be most effectively resolved in this venue").

On balance, four of the factors weigh in favor of exercising jurisdiction and one is neutral.  This Court will exercise

jurisdiction over Nationwide's declaratory judgment action.  <u>See</u>
<u>Flowers</u>, 513 F.3d at 563.

## VI.  Analysis

Nationwide asks the Court to declare that, under Tennessee
law, the Richards are ineligible to recover UM benefits for
bodily injury under the Miller Policy.  (ECF No. 26; ECF No. 26-
2 at 3-5.)  The parties' dispute in this action turns on a pure
question of Tennessee law.  There are no material facts in
dispute.  <u>See, e.g.,</u> <u>Thomson v. Hartford Cas. Ins. Co.</u>, 656 F.
App'x 109, 111-12 (6th Cir. 2016) (reviewing trial court's grant
of summary judgment in a case in which the "parties [] presented
no genuine dispute of material fact" and "[i]nstead [] dispute[d]
a question of law").  The parties agree that the Miller Policy
provides UM benefits for bodily injury to a limit of $300,000
per person, $300,000 per occurrence.  (ECF No. 30-1 ¶ 2.)  They
agree that the Richards have recovered a total of $300,000 in UM
benefits resulting from the death of their son Michael Connor
Richards in the January 7, 2018 accident under two policies
issued to the Richards in Virginia: a $250,000 policy issued by
Liberty Mutual Insurance Company ("Liberty") and a $50,000 policy
issued by GEICO.  (<u>Id.</u> ¶¶ 4-5.)  The parties agree that the
Miller Policy "has the highest limits ($300,000.00) of any
applicable insurance coverages available for the loss to Michael
Conn[o]r Richards."  (<u>Id.</u> ¶ 3.)

Nationwide argues that Tennessee's UM statute, Tenn. Code Ann. §§ 56-7-1201, et seq., bars the Richards from recovering total UM benefits for bodily injury "'in an amount greater than the limits of the policy providing the highest limits of [UM] coverage.'" (ECF No. 26-2 at 3 (quoting Tenn. Code Ann. § 56-7-1201(b)(3)(D)).)[3] Nationwide argues that the Richards have already recovered UM benefits for bodily injury equal to the "limits of the policy providing the highest limits of [UM] coverage" and are ineligible to recover further UM benefits for bodily injury under the Miller Policy. (Id. at 3-5.) The Richards argue that the limit on the recovery of UM benefits for bodily injury stated in the Tennessee UM statute "do[es] not apply to out of state policies issued and delivered in the State of Virginia," such as the Liberty and GEICO policies, and that Nationwide's "total combined liability" to the Richards under the Miller Policy is not reduced "by any payments made by other secondary underinsured motorist policies such as Liberty Mutual or GEICO." (ECF No. 30-2 at 5-6.)

The Miller Policy was issued in Tennessee. (ECF No. 30-1 ¶ 2.) Tennessee law governs its interpretation and effect. See Charles Hampton's A-1 Signs, 225 S.W.3d at 485 n.1. The

---

[3] Nationwide does not argue that the terms of the Miller Policy limit the amount of UM benefits the Richards may recover. It argues only that the Tennessee UM statute limits their recoveries.

provisions of the Tennessee UM statute govern the Miller Policy, "and, as a matter of law, become provisions of the policy." Ragsdale v. Deering, No. M20004-00672-COA-R9CV, 2006 WL 2516391, at *3 (Tenn. Ct. App. Aug. 30, 2006) (citing Sherer v. Linginfelter, 29 S.W.3d 451, 454 (Tenn. 2000)); see also Nelson v. Nelson, 409 S.W.3d 629, 632 (Tenn. Ct. App. 2013) ("[T]he [Tennessee] UM statutes explicitly state that they apply to automobile insurance policies 'delivered, issued for delivery or renewed in [Tennessee].'") (quoting Tenn. Code Ann. § 56-7-1201(a)).

In Tennessee, "[w]hen interpreting a statute, courts must ascertain and give effect to the legislative intent without restricting or expanding the statute's intended meaning." Garrison v. Bickford, 377 S.W.3d 659, 663 (Tenn. 2012) (quotation marks and citation omitted). A court "determine[s] legislative intent by applying the natural and ordinary meaning of the language without forcing or conjuring an interpretation that expands or limits its application." Green v. Johnson, 249 S.W.3d 313, 319 (Tenn. 2008) (quotation marks and citation omitted). "[I]f the language used is unambiguous," a court "simply appl[ies] the plain meaning of the words used in the statute." Garrison, 377 S.W.3d at 663. "Every word in a statute is presumed to have meaning and purpose." Id.

The Tennessee UM statute requires "[e]very automobile liability insurance policy delivered, issued for delivery or renewed in this state" to "include uninsured motorist coverage . . . for the protection of persons insured under the policy who are legally entitled to recover compensatory damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting from injury, sickness or disease." Tenn. Code Ann. § 56-7-1201(a). Subsection (b) of the statute "forbids in some situations and restricts in others the 'stacking' of separate coverages, or cumulation of benefits from separate policies." Dockins v. Balboa Ins. Co., 764 S.W.2d 529, 532 (Tenn. 1989) (citing Tenn. Code Ann. § 56-7-1201(b)). Nationwide relies on subsection (b)(3) of the statute, which is "applicable when an insured party is injured while a passenger in a third party's vehicle." Christenberry v. Tipton, 160 S.W.3d 487, 492 n.3 (Tenn. 2005) (citing Tenn. Code Ann. § 56-7-1201(b)(3)). Subsection (b)(3) provides:

> [(b)](3) With respect to bodily injury to an insured while occupying an automobile not owned by the insured, the following priorities of recovery under uninsured motorist coverage apply:
>
> (A) The uninsured motorist coverage on the vehicle in which the insured was an occupant shall be the primary uninsured motorist coverage;
>
> (B) If uninsured motorist coverage on the vehicle in which the insured was an occupant is exhausted due to

the extent of compensatory damages, then the uninsured motorist coverage provided by a policy under which the insured is a named insured shall be applicable as excess coverage to the policy described in subdivision (b)(1); provided, that if the insured is covered as a named insured under more than one (1) policy, then only the policy with the highest limits of uninsured motorist coverage shall apply;

(C) If the uninsured motorist coverage provided under the policies described in subdivisions (b)(3)(A) and (B), if applicable, is exhausted due to the extent of compensatory damages, then the uninsured motorist coverage provided by a policy under which the insured is covered other than as a named insured shall be applicable as excess coverage to the policies listed in subdivisions (b)(3)(A) and (B); provided, that if the insured is covered by more than one (1) such policy, then only the policy with the highest limits of uninsured motorist coverage shall apply; and

(D) <u>In no instance shall the insured be entitled to receive total benefits from all policies listed in subdivisions (b)(3)(A)-(C) in an amount greater than the limits of the policy providing the highest limits of uninsured motorist coverage</u>.

Tenn. Code Ann. § 56-7-1201(b)(3) (emphasis added).

No Tennessee court has addressed the question that is the basis of the parties' dispute: whether a person seeking to recover UM benefits for bodily injury under a Tennessee-issued automobile insurance policy is disallowed from doing so when he or she has already recovered up to the limits of the highest applicable UM policy, including recoveries under policies issued in other states. On its face, Tenn. Code Ann. § 56-7-1201(b)(3)(D) has broad application. Subsection (b)(3)(D) bars the stacking of UM coverage "from all policies listed in subdivisions (b)(3)(A)-(C) in an amount greater than the limits

of the policy providing the highest limits of [UM] coverage."
Tenn. Code Ann. § 56-7-1201(b)(3)(D). It provides that "[i]n no
instance" shall total UM recoveries exceed that amount. Id.
Nowhere does the statute provide that the recoveries calculated
under subsection (b)(3)(D) are restricted to recoveries under
Tennessee-issued policies. The statute does not define the word
"policy" to include only policies issued in Tennessee. By its
plain terms, subsection (b)(3)(D) provides that, when
interpreting whether a person is eligible to recover UM benefits
for bodily injury under a Tennessee-issued policy, a court must
consider the "total benefits" received "from all policies," not
only from other Tennessee-issued policies. See Green, 249 S.W.3d
at 319 (Tennessee principles of statutory interpretation call
for courts to "apply[] the natural and ordinary meaning of the
language without forcing or conjuring an interpretation that
expands or limits its application") (quotation marks and citation
omitted).

The terms of a sister provision in the Tennessee UM statute
-- Tenn. Code Ann. § 56-7-1201(d) -- support this broad reading
of subsection (b)(3)(D). Subsection (d) provides that "[t]he
limit of liability for an insurer providing [UM] motorist
coverage under this section is the amount of that coverage as
specified in the policy less the sum of the limits collectible
under all liability and/or primary [UM] insurance policies,

bonds, and securities applicable to the bodily injury or death of the insured." Tenn. Code Ann. § 56-7-1201(d). The Tennessee Supreme Court has emphasized this provision's broad application. See Poper ex rel. Poper v. Rollins, 90 S.W.3d 682, 685 (Tenn. 2002) (affirming judgment that amounts recovered by insured in tort-suit settlements offset a UM insurer's liability under the Tennessee UM statute because the statute "allows an uninsured motorist insurance carrier to limit its liability by offsetting 'all liability and/or primary [UM] motorist insurance policies, bonds, and securities . . .'") (emphasis in original) (quoting Tenn. Code Ann. § 56-7-1201(d)).

The Tennessee courts' broad construction of another sister provision in the Tennessee UM statute, Tenn. Code Ann. § 56-7-1205, is in accord. Section 56-7-1205 states that, provided the UM coverage extended under a Tennessee-issued insurance policy meets certain statutory minimum amounts, "[t]he forms of coverage may include terms, exclusions, limitations, conditions, and offsets that are designed to avoid duplication of insurance and other benefits." Tenn. Code Ann. § 56-7-1205; see also id. § 55-12-102(12)(C)(i)(a) (requiring liability insurance coverage "with a limit of not less than sixty-five thousand dollars ($65,000) applicable to one (1) accident"). Tennessee courts have stated that this provision of the Tennessee UM statute "'evinces a legislative purpose to provide recovery only up to

the minimum statutory limit.'" <u>Beam v. United Servs. Auto.</u> <u>Ass'n</u>, No. 03A01-9802-CH-00055, 1998 WL 823134, at *3 (Tenn. Ct. App. Nov. 23, 1998) (quoting <u>State Auto. Mut. Ins. Co. v.</u> <u>Cummings</u>, 519 S.W.2d 773, 775 (Tenn. 1975)). This provision, and Tennessee case law interpreting it, "makes clear that the legislature's intent is to allow [UM] carriers to limit their liability when an insured is able to collect monies elsewhere, no matter the source." <u>Green</u>, 249 S.W.3d at 322 (collecting cases).

To support their argument that subsection (b)(3)(D) of the Tennessee UM statute "do[es] not apply to out of state policies issued and delivered in the State of Virginia," the Richards cite cases standing for the proposition that, when interpreting insurance policies issued in other states, Tennessee courts should interpret the out-of-state policies according to the laws of the states in which they were issued or delivered, and not according to Tennessee's insurance laws. (ECF No. 30-2 at 4-5 (citing <u>Nelson v. Nelson</u>, 409 S.W.3d 629 (Tenn. Ct. App. 2013), and <u>Stakem v. Randolph</u>, 431 F. Supp. 2d 782 (E.D. Tenn. 2006).) That proposition is not in dispute. As Nationwide recognizes, in Tennessee, "the laws of the state where [an insurance] policy was issued and delivered are applicable to the terms of the agreement." (ECF No. 26-2 at 4 (citing <u>Hutchison v. Tenn.</u> <u>Farmers Mut. Ins. Co.</u>, 652 S.W.2d 904 (Tenn. Ct. App. 1983).)

The Tennessee UM statute does not govern the Liberty and GEICO policies issued to the Richards in Virginia.

In this case, however, the Court is not interpreting the Richards' Liberty or GEICO policies or applying Tennessee law to those policies. The Court is not interpreting any other out-of-state insurance policy. It is interpreting a Tennessee-issued policy, the Miller Policy, which both parties agree is governed by the Tennessee UM statute. (<u>See</u> ECF No. 26-2 at 4-5; ECF No. 30-2 at 4.) Given the Tennessee UM statute's limit on "stacking" UM coverage for bodily injury, the Court's interpretation of the Miller Policy requires consideration and calculation of UM benefits the Richards have received from all other policies. <u>See</u> Tenn. Code Ann. § 56-7-1201(b)(3)(D).

As matter of law, Tenn. Code Ann. § 56-7-1201(b)(3)(D) limits UM coverage under an automobile insurance policy issued in Tennessee by restricting stacking of UM benefits for bodily injury to the limits of the policy providing the highest limits of UM coverage, regardless of where the other applicable policies were issued. The Richards are not eligible to recover UM benefits for bodily injury under the Miller Policy. The Miller Policy provides UM benefits for bodily injury to a limit of $300,000 per person, $300,000 per occurrence, and "has the highest limits [] of any applicable insurance coverages available for the loss to Michael Conn[o]r Richards." (ECF No. 30-1 ¶¶ 2-

3.)  Under Tenn. Code. Ann. § 56-7-1201(b)(3)(D), the Richards'

recovery for UM benefits for bodily injury resulting from the

death of their son Michael Connor Richards in the January 7,

2018 accident is limited to $300,000, the "limits of the policy

providing the highest limits of [UM] coverage."  Tenn. Code.

Ann. § 56-7-1201(b)(3)(D).  The Richards have already recovered

$300,000 in UM benefits.  (ECF No. 30-1 ¶¶ 4-5.)  They cannot

recover additional UM benefits for bodily injury under the Miller

Policy.

Summary judgment is appropriate on Nationwide's first issue

-- whether the Richards are eligible to recover UM benefits for

bodily injury under the Miller Policy.  On this issue, there are

no material facts in dispute, and Nationwide is entitled to

judgment as a matter of law.  <u>See</u> Fed. R. Civ. P. 56(a).  The

Court GRANTS Nationwide's Motion for Summary Judgment.  The Court

DECLARES that Michael and Jill Richards are not eligible to

recover UM benefits for bodily injury under the Miller Policy.

As discussed above, on Nationwide's second issue -- whether

Defendants are ineligible to recover UM benefits under the Miller

Policy for emotional distress and mental anguish -- the Court

DISMISSES Nationwide's Complaint for lack of standing.

## VII. Conclusion

For the foregoing reasons, Nationwide's Complaint is

DISMISSED for lack of standing on the issue of emotional distress

and mental anguish.  Nationwide's Motion for Summary Judgment is GRANTED on the issue of eligibility to recover UM benefits for bodily injury.  The Court DECLARES that Michael and Jill Richards are not eligible to recover UM benefits for bodily injury under the Miller Policy.

So ordered this 29th day of January, 2020.

/s/ *Samuel H. Mays, Jr.*
Samuel H. Mays, Jr.
UNITED STATES DISTRICT JUDGE